IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KESAR ENTERPRISES INC., | ) | Case No.  05-43339-DRD |
| a Missouri Corporation, | ) | |
| | ) | |
| Debtor and Debtor-In-Possession | ) | |
| _____ | ) | |
| | ) | |
| KESAR ENTERPRISES, INC., | ) | |
| a Missouri Corporation, | ) | Adversary No. 05-04103-DRD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE BANK OF TEXAS, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| K.C. MOTELS, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

The issues pending before the Court are whether, pursuant to 28 U.S.C. §1334(c)(1), this Court should abstain from hearing Count I of the First Amended Complaint to Determine the Validity, Priority, or Extent of Liens or Other Interests in Real Property of State Bank of Texas and KC Motels, LLC; Complaint to Determine if Economy Inn is Property of the Estate, to Approve and Compel the Recording of the Warranty Deed to H. Patel, Or Alternatively, an Order Compelling the Turnover of Property of the Estate By H. Patel, H.R. Enterprises, Inc., and State Bank of Texas; Complaint for Turnover of Real Property by First National Bank of Missouri; and Complaint for Accounting By State Bank of Texas ("Complaint"), filed by Kesar Enterprises, Inc. a Missouri Corporation ("Debtor") and whether, pursuant to a Motion to Lift the Automatic Stay ("Lift Stay

Motion") filed by the State Bank of Texas ("State Bank"), the Court should lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to allow State Bank to proceed with prosecution of Case No. 04CV228896, currently pending against Debtor, K.C. Motels LLC ("KC Motels") and other individually named parties, in the Circuit Court of Jackson County, Missouri, at Independence, Division 2 ("State Court Action"). On June 10, 2005, State Bank filed a Motion Pursuant to 28 U.S.C. § 1334(c)(1) Requesting Court to Abstain from Hearing Adversary Proceeding ("Abstention Motion").[1] Debtor and KC Motels filed briefs in opposition to the Abstention Motion on a number of grounds, focusing primarily on the negative impact abstention would have on the efficient administration of the bankruptcy estate and the possibility that conflicting rulings would result if the Abstention Motion were granted. The Court convened a hearing on August 11, 2005, took the matter under advisement, and invited the parties to submit supplemental briefs in support of their respective positions.

This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1). This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(A)(E) and (K) which this Court may hear and determine. The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to these proceedings by Rules 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, State Bank's Abstention Motion is granted as to Count I of the Amended Complaint and denied as to Counts II, III and IV and State Bank's Lift Stay Motion is granted as to Count I of

---

[1] At the time of the filing of the Abstention Motion, the Complaint contained only one Count, to determine the validity and priority of liens asserted on certain of the Debtor's property. Subsequent to the filing of the Abstention Motion, Debtor filed an Amended Complaint in four Counts, the first of which was to determine the validity and priority of the liens and to which the Abstention Motion is directed.

the State Court Action and denied as to Count II.

## I. PARTIES AND FACTUAL BACKGROUND[2]

Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on May 18, 2005. On June 30, 2005, Debtor filed the Complaint seeking, among other things, a determination of the validity, priority and extent of the liens of State Bank and KC Motel in certain real property – three separate, but adjacent, tracts of land.[3] Tract 1, Tract 2 and Tract 3 together, constitute two separate motels, both of which are located at 7901 East 40 Highway, Kansas City, Missouri, 64129. Tracts 1 and 3 are commonly referred to as the "Hallmark Inn" and Tract 2 is commonly referred to as the "Economy Inn." Whether State Bank or KC Motels has a first and prior lien against the Hallmark Inn is essentially the issue currently pending in Count I of the State Court Action and is the issue presented in Count I of the Complaint. Count II of the Complaint seeks an order compelling State Bank to either record the warranty deed which transfers ownership of the Economy Inn, or alternatively, to turnover Economy Inn to the estate; Count III seeks an order directing First National Bank of Missouri ("FNB") to disclaim or release any interest it has in Tract 3; and Count IV seeks an accounting of monies received by State Bank with respect to the Economy Inn.

---

[2] The recitation of facts in this section of the opinion comes from the Abstention Motion and the briefs filed in support of and in opposition to that motion by the parties. They relate primarily to the procedural history of the matter, the claims asserted and the contentions of the parties. These facts are assumed as true for the purpose of ruling on the Abstention Motion and the Lift Stay Motion only. They are not intended to be findings as to facts which may be disputed and will not be binding on the Court should it need to adjudicate any of the claims contained in the Amended Complaint in the future.

[3] Complaint, ¶ 17. State Bank's pleading and briefs do not refer to the existence of Tract 3. However, for the purposes of ruling on the Abstention Motion and the Lift Stay Motion, the Court will consider it a fact that there are three tracts of land.

**A. Economy Inn**

On or about December 7, 1999, Debtor purchased the Economy Inn from Stadium Enterprises, Inc. ("Stadium") for a purchase price of $850,000.[4] Debtor financed the purchase of the Economy Inn by executing two Promissory Notes, one made payable to FNB in the amount of $450,000 and, the second made payable to Stadium in the amount of $400,000.[5] On or about August 24, 2002, Debtor refinanced its obligations to FNB and Stadium by executing a Promissory Note in the amount of $700,000 made payable to State Bank ("State Bank Note").[6] The State Bank Note was secured by a first deed of trust against the Economy Inn and a second deed of trust against the Hallmark Inn.[7] As a result of the refinancing, FNB was paid in full,[8] but Stadium had a remaining balance due. In the spring of 2004, Debtor defaulted on the State Bank Note and State Bank initiated a foreclosure action ("Economy Foreclosure Sale") against the Economy Inn.[9] In an effort to avoid the Economy Foreclosure Sale, Debtor sold the Economy Inn to Hasmukhbhai H. Patel ("H. Patel")[10] as evidenced by the Loan and Sale Agreement and Assumption Agreement dated June 27, 2004 (collectively referred to as the "Loan and

---

[4] Complaint, ¶ 18.

[5] Complaint, ¶ 19.

[6] Complaint, ¶ 20.

[7] Complaint, ¶ 23. At the time the State Bank Note was refinanced, FNB held the first deed of trust against Hallmark Inn. Complaint, ¶'s 41 and 42.

[8] Complaint, ¶ 21.

[9] Complaint, ¶ 27.

[10] H. Patel is an individual who resides at the Economy Inn and is the sole shareholder of H.R.Enterprises, Inc. Complaint, ¶ 12.

Assumption Agreement").[11] The proceeds from the sale were applied to the State Bank Note and Debtor's obligation under the State Bank Note was reduced to $198,385.13. The warranty deed transferring title from Debtor to H. Patel has not been filed and therefore Debtor remains the record owner of the Economy Inn.[12] H. Patel is current on his obligations under the Loan and Sale Agreement[13] and is currently in possession of and is operating the Economy Inn as a motel.[14] No payments in satisfaction of Debtor's remaining obligation on the State Bank Note have been made.[15] On April 5, 2005, an Order was entered in the State Court Action, granting final judgment in favor of State Bank and against Debtor, and other individually named parties, in the amount of $198,385.13.[16]

### B. Hallmark Inn

On or about December 20, 2002, Debtor executed a promissory note payable to FNB, with an original principal balance of $657,893.75 (the "First Note").[17] The First Note was secured by a deed of trust dated November 2, 1998 and a deed of trust dated December 7, 1999, on the Hallmark Inn, both of which were executed by Debtor and duly recorded in the mortgage

---

[11] Complaint, ¶ 33.

[12] Complaint, ¶'s 37 and 39.

[13] Complaint, ¶ 74.

[14] Complaint, ¶ 8.

[15] State Bank's Suggestions in Support of Abstention Motion ("State Bank's Suggestions"), ¶ 11.

[16] See Exhibit B to State Bank's Suggestions which is the Judgment dated April 5, 2005, executed by Judge Manners in the State Court Action on Count III of the Petition.

[17] Complaint, ¶ 41.

records of Jackson County, Missouri (collectively the "First Deeds of Trust").[18] In the spring of 2004, Debtor defaulted on the First Note.[19] In August, 2004, FNB agreed to sell the First Note and to assign the First Deeds of Trust and other loan documents to KC Motels.[20] The purchase of the First Note is evidenced by an Assignment of Note and Deed of Trust dated August 3, 2004, which was recorded in the mortgage records of Jackson County, Missouri.[21] Debtor continued in default on the First Note and in September, 2004, KC Motels commenced a foreclosure action ("Hallmark Foreclosure Sale") against the Hallmark Inn, which resulted in the initiation of the State Court Action by State Bank. Count I of the State Court Action seeks a preliminary injunction enjoining KC Motels from proceeding with the Hallmark Foreclosure Sale until a final judgment is entered regarding whether State Bank or KC Motels has a first and prior lien against the Hallmark Inn. In Count II, State Bank sought an order of judicial foreclosure of its deed of trust on the Hallmark Inn. On November 12, 2004, Judge Michael W. Manners entered an Order granting State Bank's preliminary injunction request and enjoining KC Motels and other individually named parties, from proceeding with the Hallmark Foreclosure Sale until after a trial was held on the merits of the case.[22]

## II. DISCUSSION AND ANALYSIS

---

[18] Complaint, ¶ 42. The First Deeds of Trust encumber Tract 1. It is not clear from the pleadings and briefs whether the First Deeds of Trust also encumber Tract 3.

[19] Complaint, ¶ 49.

[20] Complaint, ¶ 45.

[21] Complaint, ¶ 54.

[22] Movant's Ex. 4. Findings of Fact, Conclusions of Law and Order on the Application for Preliminary Injunction (hereinafter referred to as the "Findings of Fact"), ¶ IV.

## A. Relevant Legal Standard

State Bank argues that this Court should exercise its discretion to abstain from asserting jurisdiction over the Complaint pursuant to 28 U.S.C. § 1334(c)(1) which governs permissive or discretionary abstention and states in relevant part:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C.§ 1334(c)(1). Abstention is a narrow exception to the exercise of a court's federal jurisdiction. *See Krigel's Inc. v. ARY Jewelers, L.L.C., et al.*, 263 B.R. 280, 286 (Bankr.W.D.Mo.2001) (*citing In re Phelps Tech. Inc., et al. v. Welsh, et al.* (*In re Phelps Technologies, Inc*), 238 B.R. 819, 822-23 (Bankr.W.D.Mo.1999)) ("[F]ederal courts generally should exercise their jurisdiction if it is properly conferred and... abstention is the exception rather than the rule."). If, however, abstention is warranted, it is within the court's discretion to do so. *Krigel's Inc.*, 263 B.R. at 286 (*citing In re Titan Energy, Inc.*, 837 F.2d 325, 330 (8th Cir.1988)). Because § 1334(c)(1) speaks only in general terms, courts generally look to the "well-developed notions of judicial abstention when applying § 1334(c)(1)." *Krigel's Inc.*, 263 B.R. at 286 (*quoting In re Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 6 F.3d 1184, 1189 (7th Cir.1993)). In determining whether permissive abstention is appropriate under § 1334(c)(1), the courts have considered numerous factors, including the following: (1) the extent to which the issues involve difficult or unsettled issues of state law; (2) the extent to which state law or other esoteric and technical issues predominate; (3) the effect of abstention on the efficient administration of the bankruptcy proceedings; (4) the presence of a commenced state law action

-7-

in which the matter may be determined; (5) the degree of relatedness to the main bankruptcy proceeding; (6) the burden on the bankruptcy court's docket; (7) the likelihood that one of the parties is fourm shopping; (8) the presence or necessity in the proceeding of non-debtor parties; (9) the existence of a jurisdictional basis other than 28 U.S.C. § 1334; (10) the existence of a right to a jury trial and whether the parties do or do not consent to jury trial in the bankruptcy court; (11) the financial condition of the parties; and (12) the case's status as a "related" matter rather than a core proceeding. *Krigel's, Inc.*, 263 B.R. at 282 (*citing Phelps Tech. Inc.*, 238 B.R. at 823); *see also e.g.*, *Christensen v. Tucson Estates, Inc.* (*In re Tucson Estates, Inc.*), 912 F.2d 1162, 1169 (9th cir.1990); *Tarkio College v. Bower* (*In re Tarkio College*), 137 B.R. 34, 36 (W.D.Mo.1992); *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc.* (*In re Republic Reader's Serv., Inc.*), 81 B.R. 422, 429 (Bankr.S.D.Tex.1987). Courts should apply these factors flexibly as their relevance and importance will vary depending on the specific facts of each case and no one factor is determinative. *See Krigel's Inc*., 263 B.R. at 286 (*citing Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 6 F.3d at 1189).

### B. Analysis and Application of the Relevant Factors

Although they may be plead differently, Count I of the Complaint and Count I of the State Court Action both seek a determination of the validity, priority and extent of the liens of State Bank and KC Motels on the Hallmark Inn property. As they are currently plead, Counts II, III and IV of the Complaint appear to be relatively straightforward issues, involving simple requests to record documents related to both properties (Counts II and III) and provide an accounting of payments received by State Bank regarding the Economy Inn (Count IV). It is doubtful that the issues raised in Counts II, III and IV, as they are currently plead, will involve extended litigation. Although there are some overlapping facts, the Court is not convinced that

severing Count I from the remaining Counts, so that the issues raised in Count I can be fully and finally determined in the State Court Action, will have a negative impact on the administration of the Debtor's Bankruptcy Estate or conflict with this Court's ability to resolve the claims asserted in the remaining Counts of the Complaint.  There are a few factors which could be viewed as favoring a decision by the Court to refuse to abstain as to Count I, however, the Court finds that the majority of the factors to be considered in connection with State Bank's request for discretionary abstention weigh in favor of abstaining.

      While the Complaint initiates a core proceeding, in its present form it raises no issue of bankruptcy law, but it is governed entirely by state law.  Although the state law issues may not be particularly novel or unsettled, the state court has already invested considerable effort in litigating them, having held several days of evidentiary hearings and having issued an extensive opinion including numerous findings of fact and legal conclusions.  The determination of the priority of the liens may be essential to the formulation of a plan of reorganization and therefore closely related to the bankruptcy proceeding.  While any delay could have an adverse effect upon the administration of the estate, this Court concludes, that the issues can be promptly reached in the state court, perhaps as promptly as they could be determined in this Court.  While adjudication of this proceeding would impose no particular burden on this Court's docket, it is already specially set on the state court's docket for the end of the month of December.  This Court also believes that this adversary proceeding, and perhaps the bankruptcy proceeding itself, was initiated at least in part by a desire to relitigate the issues determined by the state court in the hope that a different court would adopt a different view.  Finally, if this Court felt that abstention as to Count I with retention of the additional counts now contained in the Complaint would require significant duplication of effort on the part of the parties or result in potentially

inconsistent judgments, it would deny the motion to abstain and the motion for relief from stay and retain jurisdiction of all the claims asserted in the Complaint. Because the Court has concluded that that is not the case, it will, for the reasons cited and explained below, grant both motions.

There is no basis for federal jurisdiction other than § 1334, which weighs in favor of a decision to abstain. *See Krigel's Inc.*, 238 B.R. at 825 (*quoting Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Titan Energy, Inc.* (*In re Titan Energy, Inc.*), 837 F.2d 325, 333 (8th Cir.1988)). ("Abstention is ... appropriate where the action could not have been commenced in federal court absent bankruptcy jurisdiction and the issues can be timely adjudicated in state court." ). The issues that will be litigated in Count I of the Complaint are predominately state law matters including: alter-ego, fraudulent transfer and merger of title. "When the issues in an adversary proceeding are at heart state law claims rather than federal claims, it is appropriate that the bankruptcy court abstain from hearing those claims." *Krigel's Inc.*, 263 B.R. at 828 (*quoting Eubanks v. Esenjay Petroleum Corp.*, 152 B.R. 459, 465 (E.D.La.1993)). While these state law causes of action may not present difficult or unsettled areas of law, for purposes of comity and respect for state law, this factor weighs in favor of abstention as to Count I of the Complaint.

In opposing the Abstention Motion, Debtor and KC Motels rely heavily on the argument that abstention by this Court would require duplication of litigation efforts, hinder the efficient administration of Debtor's bankruptcy estate and delay confirmation of a Chapter 11 Plan. Despite the fact that there is a State Court action currently pending on the precise issues raised in Count I of the Complaint, in which the state court judge has received three days of testimony, made extensive findings of fact and conclusions of law and has scheduled a first-up trial setting for December 26, 2005, Debtor and KC Motels maintain that it would be more efficient, both in

terms of judicial economy and administration of the estate, for this Court to re-litigate issues that have already been at least preliminarily determined in the State Court Action. This Court disagrees.

Debtor and KC Motels assert that they could be ready for trial before this Court as early as late October. Considering Debtor's own suggestion that additional amendments to the Complaint may be in order, and the fact that no discovery has taken place, the Court questions that assertion. Further, even if the parties were ready for trial in as little as 60 days from now, the difference between a late November trial date and a late December trial date is insufficient justification for the Court to refuse to abstain in light of all the other factors in favor of abstention. Debtor's additional arguments that either it or KC Motels may move the State Court to add additional parties, thereby possibly causing the State Court Judge to recuse himself, or the suggestion that counsel for KC Motels may be unavailable for the December 26th trial setting are simply too speculative and too tenuous to have any persuasive value. Many things may happen in the State Court Action, but this Court must view the proceeding as it now stands. While such motions may be filed, they may also be opposed and denied by the state court or, as noted above, other changes may be made to the landscape in this proceeding which would similarly affect the ability of this Court to adjudicate it in the near future.

Debtor and KC Motels vigorously contend that a decision by this Court to abstain from hearing Count I, while hearing Counts II, III and IV, could result in conflicting rulings. The Court finds the hypothetical scenarios posited by Debtor, which suggest that if certain amendments to the Complaint are made, or if certain motions are filed in the State Court Action, that duplication of litigation efforts and conflicting rulings would result, far too speculative. While the Court notes that there are some overlapping facts, it does not view those facts as so

complex and intertwined that severing Count I from the Complaint would be offensive to the principles of judicial economy or result in conflicting rulings. Based on the Complaint as it is currently plead, the Court does not believe that the parties will be forced to duplicate litigation efforts as the Counts in the Complaint are sufficiently distinct in their respective requests. While there is a common background of core facts, the claims stated in Count I of the Complaint and in the remaining Counts of the Complaint diverge because they relate to different properties. Debtor has simply failed to identify any disputed legal or factual issues common to the claims asserted in Count I and those asserted in the remaining Counts of the Complaint on which the state court and this Court might rule differently. For example, Debtor asserts that this Court needs to "interpret" the Loan and Assumption Agreement with respect to the Economy Inn. What the Debtor does not demonstrate is precisely how any interpretation that this Court might need to make of the documentation relating to the Economy Inn will conflict in any way with what the state court has done or will do in determining the priority of liens on the Hallmark Inn. At the hearing, Debtor also asserted that conflicts might arise in the event Debtor reverses its course and, rather than affirming the transaction, amends the Complaint to assert a fraudulent conveyance claim against the transferees of the Economy Inn. Likewise, this Court fails to see how that would place it in conflict with the determinations being made by the state court as to the priority of liens on a different piece of property.

The final factor which the Court believes weighs heavily in favor of abstention is the likelihood that the commencement of the adversary proceeding involves forum shopping by one of the parties. The facts of this case suggest, at the very least, that Debtor and KC Motels would like another opportunity to present their case. The state court judge has already determined that the creation of KC Motels, the purchase of the First Note and assignment of the First Deeds of

Trust, and the initiation of the Hallmark Foreclosure Sale comprised one continuous act attempting to "wipe out" State Bank's lien on the Hallmark Property.[23] The Findings of Fact also reveal that the state court judge found that KC Motels is the alter-ego of the Debtor, and that the Debtor, KC Motels and other individually named parties fraudulently procured legal title to the Hallmark Inn with the intent to hinder, delay and defraud State Bank.[24] Debtor intimated its dissatisfaction with the way the State Court Action was heading in its Suggestions in Opposition, where it stated that the State Court Judge had made an "unusual finding" regarding whether a fraudulent transfer had occurred.[25] Another illustration of the point, also taken from Debtor's Suggestions in Opposition to the motion is Debtor's suggestion that although the state court has already entered a judgment against it in the amount of $198,385.13, this Court might, depending upon its interpretation of the Loan and Sale Agreement, reach a different conclusion.[26] To the extent the Debtor is suggesting that this Court either can or should revisit the judgment entered against it in the State Court Action, this Court disagrees. To the extent the Debtor is suggesting that the state court has adopted a particular position with respect to the implications of the Loan and Sale Agreement and that this Court might, in the context of adjudicating Counts II, III and IV adopt a different one, the Court reiterates that it is unconvinced that it would be required to engage in the kind of interpretation of the documents executed in connection with the sale of the

---

[23] Findings of Fact, ¶'s II (27), II (38-46).

[24] Findings of Fact, ¶'s III (3).

[25] Debtor's Suggestions in Opposition to State Bank of Texas' Motion Pursuant to 28 U.S.C. § 1334(c)(1) Requesting Court to Abstain from Hearing Adversary Proceeding ("Debtor's Suggestions"), p. 4.

[26] Debtor's Suggestions, p. 8.

Economy Inn which would conflict with the state court's existing or potential findings as to the priority of the liens on the Hallmark Inn. Based on the foregoing facts, the Court is suspicious that Debtor and KC Motels may be shopping for an opportunity to bypass the state court judge's Findings of Fact and Conclusions of Law for a perhaps more favorable ruling from this Court.

### III. CONCLUSION AND ORDER

In sum, while the Court notes that abstention is a narrow exception to the exercise of federal jurisdiction, after application of the relevant factors to the facts of this case, the Court finds that discretionary abstention is proper as to Count I of the Complaint. For all the reasons cited above, State Bank's Abstention Motion is granted as to Count I of the Complaint and denied as to Counts II, III and IV and State Bank's Lift Stay Motion is granted as to Count I of the State Court Action and denied as to Count II.

A separate Order will be entered in accordance with Bankruptcy Rule 9021.

Dated:   September 28, 2005             /s/ Dennis R. Dow
                                        THE HONORABLE DENNIS R. DOW
                                        UNITED STATES BANKRUPTCY JUDGE